# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREGORY F. ROBINSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-362-SRF |
| | ) |
| SGT. WILFRED BECKLES, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

In this action filed pursuant to 42 U.S.C. § 1983, plaintiff Gregory F. Robinson ("Robinson") seeks relief for alleged civil rights violations committed by Angelina DeAllie ("DeAllie"), Veronica Downing ("Downing"), and Wilfred Beckles ("Beckles") (collectively, "defendants"). Pending before the court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by defendants.[1] (D.I. 189) For the following reasons, defendants' motion for summary judgment is denied.[2]

## II. BACKGROUND

### A. Procedural History

On April 29, 2010, Robinson, a former inmate incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983.[3] (D.I. 2) Plaintiff alleged constitutional violations, including violations of the First,

---

[1] Defendants' opening brief in support of their motion for summary judgment is D.I. 228, plaintiff's reply memorandum following remand is D.I. 232, plaintiff's opening brief following remand is D.I. 229, and defendants' reply brief in support of their motion for summary judgment is D.I. 231.
[2] The parties consented to jurisdiction by a U.S. Magistrate Judge on July 7, 2017. (D.I. 222)
[3] Robinson was released from prison in 2016. (D.I. 229, Ex. 10 at 2)

Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as state tort claims. (D.I. 2); *see also Robinson v. Danberg*, 729 F. Supp. 2d 666, 672-73 (D. Del. 2010).

On August 6, 2010, the court dismissed thirty-seven defendants and deemed the majority of the claims frivolous. (D.I. 18); *Robinson*, 729 F. Supp. 2d at 689. On January 21, 2011, plaintiff moved to amend his complaint to correct pleading deficiencies identified by the court, and the court granted this motion to amend on April 27, 2011. (D.I. 34; D.I. 54)

On December 16, 2010, the court dismissed the complaint for failure to submit completed service forms. (D.I. 27) Plaintiff then moved for leave to file an amended complaint and two motions for the appointment of counsel. (D.I. 29; D.I. 31; D.I. 33) The court reopened the case on February 2, 2011, and granted plaintiff thirty days to serve the complaint. (D.I. 36)

On October 24, 2012, the court referred the case to the Federal Civil Panel for representation and stayed the case. (D.I. 154) The stay was lifted on December 7, 2012 upon the entry of appearance by counsel of record. (D.I. 155)

On August 15, 2014, defendants moved for summary judgment. (D.I. 189) Judge Robinson granted defendants' motion for summary judgment on July 24, 2015 and directed that judgment be entered in defendants' favor. (D.I. 209; D.I. 211); *Robinson v. Beckles*, 117 F. Supp. 3d 528 (D. Del. 2015).

Plaintiff timely appealed Judge Robinson's decision, and the Third Circuit issued its Opinion on December 19, 2016. *See Robinson v. Danberg*, 673 F. App'x 205 (3d Cir. 2016). The Third Circuit affirmed in part, reversed in part, and vacated in part. *See id.* at 208. Specifically, the Third Circuit: (1) reversed the entry of summary judgment on Robinson's Eighth Amendment claim against DeAllie for allegedly macing his cell, (2) vacated this court's

2

grant of summary judgment for Beckles on Robinson's pretrial Fourteenth Amendment excessive force claim for allegedly injuring his hand while removing handcuffs and remanded the claim for further proceedings consistent with its opinion, and (3) vacated this court's grant of summary judgment for Downing on Robinson's post-conviction Eighth Amendment excessive force claim for allegedly striking Robinson in the face and remanded the claim for further proceedings consistent with its opinion. *Id.* at 210-12.

### B. Facts

On remand, this court reviews Robinson's pretrial Fourteenth Amendment excessive force claim against Beckles ("the Beckles incident") and his post-conviction Eighth Amendment excessive force claim against Downing ("the Downing incident").

#### i. The Beckles Incident

Robinson claims that on June 20, 2008, Beckles injured his foot and hand while uncuffing him in his cell, and therefore raises a pre-trial excessive force claim. (D.I. 229 at 8) Robinson claims that when Beckles returned Robinson to his cell after a disagreement regarding which shower Robinson should use, Beckles attempted to hit him in the back with the door, but instead closed the steel cell door onto his foot. (*Id.* at 3; Ex. 3 at 36:22-24) Beckles uncuffed his right hand and, while uncuffing his left hand, Beckles allegedly put both hands on the cuff and his foot on the door before yanking the handcuff, "split[ting] the top of [Robinson's] hand." (*Id.* at 37:1-15)

Beckles, on the other hand, testified that after he walked Robinson back to his cell and shut the door, he opened the flap to uncuff Robinson, but Robinson walked away from the flap. (D.I. 228, Ex. A at 49:24-50:2) Beckles reported that after several direct orders, Robinson finally came back to flap to be uncuffed. (*Id.* at 50:2-4, 50:16-24) After Beckles uncuffed one

hand and as he was uncuffing the other, Robinson allegedly tried to jerk his hand away from Beckles. (*Id.* at 50:4-6, 51:3-6) Beckles pulled back on the handcuffs as they were starting to open and secured the flap. (*Id.* at 50:6-8) Beckles also testified that having only one handcuff open and one hand loose posed a security concern because an inmate could use the open handcuff as a weapon. (D.I. 228, Ex. A at 51:17-24)

### ii. The Downing Incident

Robinson claims that Downing filed false reports to cover up an incident on September 14, 2009, in which she hit Robinson in the mouth. (D.I. 229 at 6) During this incident, Robinson contends that backup was called to investigate a missing food cup from Robinson's tray. (D.I. 229, Ex. 3 at 59:18-21) Robinson testified that an officer handcuffed Robinson behind his back before he walked out of his cell. (*Id.* at 59:21-23, 62:16) As Robinson was walking out of his cell, Downing allegedly hit him in the mouth. (*Id.* at 59:23-60:1) Robinson cannot recall whether he was hit with an open hand or closed fist, but upon further questioning, ultimately agreed that it was a "slap to the mouth." (*Id.* at 60:17-61:6) He testified that his mouth was left bloody and his tongue was split open. (*Id.* at 61:5-10) Robinson also testified that Major Scarborough was present and directed that Robinson be taken to see the nurse. (*Id.* at 61:21-24)

Downing denies slapping Robinson and argues that even if the court were to construe facts in the light most favorable to Robinson, Robinson's own testimony reveals that, at worst, he was slapped once by Downing. (D.I. 231 at 3; D.I. 228 at 4; D.I. 229, Ex. 17 at 26:10-22)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See*

*Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B. Fourteenth Amendment's Due Process Clause

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The reasonableness of the force used is determined by the *Kingsley* factors:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396). While the Supreme Court noted that this list is not exhaustive, the Kingsley factors provide a guide for types of objective circumstances that are "potentially relevant to a determination of excessive force." *Id.*

### C. Eight Amendment's Cruel and Unusual Punishment Clause

The Eighth Amendment protects convicted prisoners from cruel and unusual punishment. Force is considered "cruel and unusual punishment" when it is applied "maliciously and sadistically for the very purpose of causing harm" instead of "in a good faith effort to maintain or

6

restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether actions taken inflicted unnecessary and wanton pain and suffering instead of in a good faith effort to maintain or restore discipline, the court should consider the following factors:

> [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] . . . the extent of injury inflicted, . . . [4] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials . . ., and [5] any efforts made to temper the severity of a forceful response.

*Whitley*, 475 U.S. at 321 (internal quotation marks and citations omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The Court in *Hudson* noted that "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). However, the Court also noted that "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

### D. Qualified Immunity

"Qualified immunity protects government officials from civil liability for any action that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salerno v. Corzine*, 449 F. App'x 118, 123 (3d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Rouse v. Plantier*, 182 F.3d 192, 196 (3d Cir. 1999). Qualified immunity is an affirmative defense. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). In evaluating a claim of qualified immunity, the court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) (quoting *Conn v.

7

*Gabbert*, 526 U.S. 286, 290 (1999)).

Qualified immunity is a question of law determined by the court.[4] *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). The "inquiry is an objective, fact-specific pursuit." *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) (citation omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Morse v. Frederick*, 551 U.S. 393, 442 n.5 (2007) In assessing this prong, courts will routinely look to existing case law (from both within and outside this jurisdiction) to assess whether a right was "clearly established." *Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011). Additionally, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, "defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the action was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."[5] *In re City of Philadelphia Litig.*, 49 F.3d 945, 961-62 (3d Cir. 1995) (alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

---

[4] However, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro*, 436 F.3d at 405 (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995)).

[5] In other words, qualified immunity may be available where "reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Good v. Dauphin Cty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989).

8

## IV. DISCUSSION

### A. Pre-Trial Fourteenth Amendment Excessive Force Claim Against Beckles

The Third Circuit concluded that the District Court erred by "focusing exclusively on the severity of Robinson's injury at the expense of the other *Kingsley* factors." *Robinson*, 673 F. App'x at 209. Hereinafter, the court analyzes the Beckles incident under all six *Kingsley* factors: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473. Viewing the record in light of these factors, the court finds that a reasonable factfinder could conclude that the force used against Robinson was objectively unreasonable.

#### a. The relationship between the need for the use of force and the amount of force used

Robinson testified that Beckles took him back to his cell after a disagreement over which shower to use. (D.I. 229, Ex. 3 at 36:16-24) Robinson and Beckles dispute whether Robinson was cooperative once he was in his cell. (*Compare* D.I. 229, Ex. 3 at 36:16-37:15 *with* D.I. 228, Ex. A at 49:22-51:6) Beckles testified that Robinson was uncooperative and posed a security risk that required a use of force. (D.I. 228, Ex. A at 51:3-24) However, on a motion for summary judgment, the court must view the facts in the light most favorable to Robinson and take into account his deposition, which stated that Robinson was cooperative and securely locked in his cell. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). Accordingly, the factfinder could determine there was no need for the use of force, and therefore the amount of force utilized exceeded the

9

need. (D.I. 229, Ex. 3 at 36:16-37:8) Therefore, this factor weighs against granting judgment for defendant Beckles as a matter of law.

### b. The extent of the plaintiff's injury

Robinson testified that the top of his hand was split and contemporaneous medical records describe "bleeding from hand, abrasion still present, [and] edema noted." (D.I. 229, Ex. 6) An x-ray report conducted approximately one month after the incident showed "soft tissue swelling" on Robinson's left hand. (*Id.*, Ex. 7) Additionally, a June 13, 2017 medical report noted that Robinson has a "[t]raumatic right wrist contusion with strain/sprain" and "traumatic induced chronic pain relative to left hand/ankle." (*Id.*, Ex. 9 at 2) At the defense medical examination on November 1, 2017, defendant's medical expert opined that "[h]is physical examination in regard to the left hand is entirely within normal limits. He does not report weakness and on examination has a wide variation in grip strength testing[,] suggesting diminished voluntary effort." (*Id.*, Ex. 10 at 3) Consequently, there is a dispute between the plaintiff's and defendants' medical experts on the permanency and severity of plaintiff's hand injury which must be resolved at trial precluding summary judgment in favor of defendants on this point.

As for Robinson's claim that Beckles slammed the steel door of his cell onto his foot, contemporaneous medical records did not note any injuries to Robinson's foot. (*See id.*, Ex. 6) Indeed, this foot injury is not recognized until a separate x-ray report approximately four months later, on September 26, 2008. (*See id.*, Ex. 6; Ex. 7; Ex. 8) This September 2008 x-ray report noted for the first time that "[t]here are mild osteoarthritic changes present" in Robinson's left foot. (*Id.*, Ex. 8) Robinson also pointed to a medical report from June 2017, which discussed a "left ankle contusion/strain/sprain, traumatic left foot osteoarthritis, . . . [and] traumatic induced

10

chronic pain relative to left hand/ankle." (*Id.*, Ex. 9 at 2) The June 2017 medical report further noted Robinson "would have permanent restrictions of no high impact activities, repetitive stress activities to these regions." (*Id.*) Based upon the defense medical examination on November 1, 2017, defendant's medical expert concluded "[b]ased on the presence of his mild objective soft tissue swelling, there is evidence to support a mild permanent impairment in regard to the ankle." (*Id.*, Ex. 10 at 4) Further, the November 2017 medical report attributed these symptoms to the incident. (*Id.* at 3) Judge Robinson did not believe this to be a severe injury, questioning whether the beginning signs of osteoarthritis were related to the Beckles incident. *Robinson*, 117 F. Supp. 3d at 536-37. However, upon further medical expert discovery, plaintiff has produced medical evidence that his foot and ankle injuries are permanent and there is a causal relationship to the Beckles incident. (D.I. 229, Ex. 9; Ex. 10) Defendants have not addressed plaintiff's foot and ankle injury in their briefing. (*See* D.I. 228; D.I. 331) Robinson's ankle and foot injury persists and there is an issue of fact regarding whether this injury was proximately caused by the Beckles incident. This factor weighs against granting summary judgment for defendant Beckles.

### c. Any effort made by the officer to temper or to limit the amount of force

While Beckles avers that there is no evidence that he permitted a situation to escalate, there is also no evidence that he attempted to temper or limit the amount of force he used. (D.I. 229, Ex. 3 at 36:16-37:8; D.I. 228, Ex. A at 49:22-51:24) Therefore, this factor weighs against granting summary judgment for defendant Beckles.

### d. The severity of the security problem at issue

In determining the severity of the security problem at issue, the facts must be viewed in the light most favorable to Robinson. *See Gonzalez*, 678 F.3d at 257; *Giles*, 571 F.3d at 326. Accordingly, there was no severe security problem at the time of the incident because Robinson

11

alleges he was securely locked in his cell and he alleges he was cooperative. (D.I. 229, Ex. 3 at 36:16-37:8) Therefore, this factor weighs against granting summary judgment.

### e. The threat reasonably perceived by the officer

As for the threat reasonably perceived by the officer, Beckles testified that if he was dealing with an inmate that was struggling or was particularly unruly, protocol stated to leave the inmate with the handcuffs and, depending on the situation, call another officer. (*Id.*, Ex. 16 at 48:6-9) Beckles noted he should not need to pull on an inmate's handcuffs because he "would injure the inmate." (*Id.* at 48:9-11) However, Beckles further testified "[t]he minute one hand is loose, he could use an open cuff as a weapon. If I am holding it, I try to get it off. If he have [*sic*] both cuffs on and he don't [*sic*] come, then it is a different case. But having one cuff to his hand and one end open, inmates use that as a weapon. So if I have that, my intention is to get that before he get [*sic*] it from me." (D.I. 228, Ex. A at 51:17-24) However, Robinson argues that Beckles could not have reasonably perceived a threat from Robinson because he was in a maximum security cell. This factor weighs against granting summary judgment in favor of defendant.

### f. Whether the plaintiff was actively resisting

In determining whether the plaintiff was actively resisting, the evidence is viewed in the light most favorable to Robinson. *See Gonzalez*, 678 F.3d at 257; *Giles*, 571 F.3d at 326. Robinson contends he was securely locked in his cell and was not actively resisting Beckles during the incident. (D.I. 229, Ex. 3 at 36:16-37:8) Beckles testified that Robinson refused to come to the flap to be uncuffed, and when he was being uncuffed, Robinson jerked away from him. (D.I. 228, Ex. A at 50:16-51:6) This factor weighs against granting summary judgment in favor of defendant.

The Third Circuit indicated that when the facts are viewed in the light favorable to plaintiff, "a reasonable factfinder could conclude Beckles's use of force was excessive."[6] *See Robinson*, 673 F. App'x at 210. Therefore, upon considering the *Kingsley* factors, the court denies defendants' motion for summary judgment with respect to Robinson's pretrial excessive force claim against Beckles. The aforementioned material issues of fact are required to be resolved by the jury at trial.

### B. Post-Conviction Eighth Amendment Excessive Force Claim Against Downing

The Third Circuit determined that the District Court's opinion was "devoid of any consideration of Robinson's Eighth Amendment claim, i.e., that Downing's alleged act of striking Robinson was an Eighth Amendment violation in the first place." *Robinson*, 673 F. App'x at 211. Hereinafter, the court analyzes the Downing incident under the relevant factors enumerated in *Whitley*: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] . . . the extent of injury inflicted, . . . [4] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials . . ., and [5] any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotation marks omitted) (quoting *Johnson*, 481 F.2d at 1033). Viewing the record in light of these factors, the court finds that a reasonable factfinder could conclude that the force used against Robinson was objectively unreasonable.

#### a. The need for the application of force

In determining the need for the application of force, the facts are viewed in the light most favorable to plaintiff. *See Gonzalez*, 678 F.3d at 257; *Giles*, 571 F.3d at 326. Here, Downing

---

[6] In a footnote, Chief Judge Smith stated that he would affirm the grant of summary judgment against Beckles because he did not believe a reasonable factfinder could conclude the force used against Robinson was objectively unreasonable. *Robinson*, 673 F. App'x at 210 n.1.

13

denies ever slapping Robinson in the face, or initiating any physical contact that was threatening while he was handcuffed. (D.I. 229, Ex. 17 at 26:10-22) Robinson, however, testified that when he walked out of his cell handcuffed behind his back, Downing hit him in the face. (*Id.*, Ex. 3 at 59:23-60:1, 62:15-16) Viewing facts in favor of plaintiff for purposes of the pending motion for summary judgment, there was no threat posed and no need for the application of force. Thus, a reasonable factfinder could determine that the use of force occurred and that it was inherently excessive. This weighs against granting defendant Downing's motion for summary judgment.

### b. The relationship between the need and the amount of force that was used

According to the plaintiff, there was no need for the use of force because he walked out of his cell handcuffed behind his back. (*Id.*) Accordingly, the factfinder could determine there was no need for the use of force and therefore the amount of force utilized exceeded the need. This factor weighs against granting defendant Downing's motion for summary judgment.

### c. The extent of injury inflicted

Robinson testified that his mouth was bloodied and contemporaneous medical records show "a small laceration" on the side of his tongue. (*Id.* at 61:5-8; Ex. 11) The nurse who treated Robinson immediately following the injury noted "pain minimal," and "no swelling and no bleeding" before giving Robinson a Motrin. (*Id.*, Ex. 11) Robinson's medical records do not detail any pain, discomfort, or abnormalities as a result of this injury. (*See id.*, Ex. 9; Ex.10) However, "[t]he absence of serious injury" is "relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7. This factor is neutral.

### d. The extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials

Robinson testified that he was handcuffed behind his back and neither Robinson nor Downing have testified to or provided evidence of a threat to staff or inmates, as reasonably perceived by the responsible officials. (D.I. 229, Ex. 3 at 59:23-60:16, 62:11-19; Ex. 17 at 26:10-22; D.I. 231 at 3; D.I. 228 at 8-9) Therefore, this factor weighs against granting summary judgment in favor of defendant.

### e. Any efforts made to temper the severity of a forceful response

There is no evidence that Downing attempted to temper or limit the severity of a forceful response. (D.I. 229, Ex. 3 at 59:23-61:19; Ex. 17 at 26:4-22) This factor weighs against granting defendant Downing's motion for summary judgment.

Downing argues that while a slap to the face is inappropriate, this behavior is deserving of internal discipline and does not rise to the level of an Eighth Amendment violation. (D.I. 228 at 8-9) Instead, Downing argues that not every push or shove violates the Constitution. (*Id.* at 9 (citing *Johnson*, 481 F.2d at 1033) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). Downing does not address the factors identified in *Whitley*. (*See* D.I. 228; D.I. 231) The cases Downing cites are inapposite. In *Monroe v. Phelps*, 520 F. App'x 67 (3d Cir. 2013), the force used against plaintiff was deemed reasonable because he admittedly refused to hand over a white object when commanded to and while in a drug rehabilitation program. *Monroe*, 520 F. App'x at 70. Similarly, in *Reyes v. Chinnici*, 54 F. App'x 44 (3d Cir. 2002), it was undisputed that plaintiff was being unruly, uncooperative, and provoking the defendant. *Reyes*, 54 F. App'x at 47. Here, it *is* disputed as to whether plaintiff acted in an uncooperative or unruly way, and

15

viewing the facts in the light most favorable to plaintiff, a jury issue exists as to whether the plaintiff was being cooperative during this incident.

Therefore, based upon the *Whitley* factors, the court denies defendants' motion for summary judgment with respect to Robinson's post-conviction excessive force claim against Downing.

### C. Qualified Immunity

The Third Circuit did not instruct this court to consider qualified immunity. *See generally Robinson*, 673 F. App'x 205. Defendants previously raised this issue in their original opening and reply briefs in support of their motion for summary judgment. (D.I. 190 at 17-18; D.I. 203 at 10) It was unnecessary for Judge Robinson to reach the issue of qualified immunity based on her decision granting defendants' motion for summary judgment. *See generally Robinson*, 117 F. Supp. 3d 528. Defendants raise this, again, in their opening brief in support of their motion for summary judgment on remand. (D.I. 228 at 9-11) The court can consider the issue on remand because it was not an issue on appeal and it was preserved in defendants' opening and reply briefs before the court. (D.I. 190; D.I. 203) *See Avocent Redmond Corp. v. Raritan Computer, Inc.*, 2005 WL 612722, at *5 (S.D.N.Y. Mar. 11, 2005).

As previously discussed, the plaintiff has sufficiently alleged issues of material fact as to whether Downing and Beckles used excessive force in two separate incidents, in violation of plaintiff's constitutional rights under the Eighth and Fourteenth Amendments, respectively. Additionally, the Third Circuit reversed the entry of summary judgment on Robinson's Eighth Amendment claim against DeAllie, finding that there was sufficient evidence for a reasonable factfinder to conclude that DeAllie maced Robinson, and the use of force was more than *de minimis*. *Robinson*, 673 F. App'x at 212. Therefore, whether any of the three defendants should

be granted summary judgment based on qualified immunity turns on whether each defendant violated a clearly established right at the time of the alleged constitutional misconduct. In this regard, the court must determine whether a reasonable person in defendant's position would have understood that he was violating plaintiff's Eighth or Fourteenth Amendment rights. The Third Circuit's guidance is: "some but not precise factual correspondence to precedent is necessary for the defendant to be charged with knowledge of the unlawfulness of his or her actions." *Good v. Dauphin County Soc. Serv. For Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989) (internal quotations marks omitted) (quoting *Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3d Cir. 1989)).

### a. Alleged Eighth Amendment Violations
#### i. Spraying capstun under a cell door

Defendants argue that a reasonable officer would not have known that they were violating plaintiff's constitutional rights by "spray[ing] capstun under a cell door." (D.I. 228 at 11) The court in *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) noted that "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" *Williams*, 77 F.3d at 763 (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). *See also Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (denying qualified immunity because the right to be free from excessive use of pepper spray was clearly established). Here, DeAllie allegedly maced Robinson while he was in his cell and Robinson's "shirt had to be tied around his face." *Robinson*, 673 F. App'x at 211. Therefore, based on established precedent, summary judgment is denied as the court finds it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted.

### ii. Slapping a handcuffed inmate

Defendants contend that a reasonable officer would not have known that they were violating plaintiff's constitutional rights by "slap[ping] a handcuffed inmate resulting in no injury." (D.I. 228 at 11) Defendants argue that the Downing incident allegedly occurred in 2009, and that at that time, it was not clearly established that such action would constitute an Eighth Amendment violation. However, the court in *Santiago v. Fields*, 170 F. Supp. 2d 453, 459-460 (D. Del. 2001) denied defendants' motion for summary judgment, finding defendants were not entitled to qualified immunity where plaintiff claimed he was handcuffed behind his back when defendants allegedly used excessive force. *Santiago*, 170 F. Supp. 2d at 458-59. Similarly, here, plaintiff was handcuffed behind his back when Downing allegedly struck him. Therefore, based on established precedent, summary judgment is denied as the court finds it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted.

### b. Alleged Fourteenth Amendment violation by yanking on handcuffs or hitting inmate's foot with a cell door

Defendants contend that a reasonable officer would not have known that they were violating plaintiff's constitutional rights by "yank[ing] on handcuffs or hit[ting] an inmate's foot with a cell door." (D.I. 228 at 11) Further, defendants argue that *Kingsley* was not decided until 2015, seven years after the Beckles incident, thus, no sufficient precedent existed at the time of the alleged incident to put defendant on notice that such conduct is constitutionally prohibited. (*Id.*) While *Kingsley* was not decided until several years after the Beckles incident, the idea that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" was already established in *Graham* and expressly cited in *Kingsley*. *Kingsley*, 135 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 395 n.10 (1989)). Moreover, there were other

18

cases that were analogous to the case at hand, such that a prison official would know that slapping a cooperative inmate who is handcuffed behind his back, hitting an inmate with a door, or yanking on the handcuffs of a secured, cooperative inmate would not be lawful. *See Jones v. Hadsall*, 2000 WL 554460, at *2 (7th Cir. 2000) (concluding district court erred in dismissing an excessive force claim against officers who slammed plaintiff's hands in slot door); *Davidson v. Flynn*, 32 F.3d 27, 29-30 (2d Cir. 1994) (finding material questions of fact as to whether excessive force was used where plaintiff was compliant but potentially an escape risk, but handcuffs were shackled so tightly to cause severe pain and permanent injury); *Caridi v. Forte*, 967 F. Supp. 97, 99 (S.D.N.Y. 1997) (concluding excessive force was not used where plaintiff was resisting while being uncuffed). Therefore, based on established precedent, summary judgment is denied as the court finds it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Although the qualified immunity inquiry involves disputed issues of fact (i.e., whether DeAllie, Beckles, or Downing committed the alleged acts), the immunity issue itself is necessarily subsumed in plaintiff's Section 1983 claims. *See Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993). For example, if a jury finds that plaintiff has proven all the elements necessary to recover on his constitutional claims, it could not at the same time conclude under the facts of this case that DeAllie, Beckles, and Downing did not violate a "clearly established" constitutional right of which "a reasonable person would have known." *Id.* at 1504. Similarly, if a jury finds that plaintiff cannot recover on his constitutional claims, then the immunity issue would become moot. *See id.* at 1503-04.

The court concludes that, viewing the facts favorable to the plaintiff, no reasonable correctional officer in DeAllie's, Beckles's, or Downing's position at the time of the alleged

19

conduct would have concluded that his or her actions were lawful. Consequently, qualified immunity is not available to each of the defendants as a matter of law and there are material issues of fact to be resolved at trial concerning plaintiff's claims of excessive force in violation of the plaintiff's rights under the Eighth and Fourteenth Amendments.

Dated: January \_\_, 2019

                                        Sherry R. Falcon
                                        UNITED STATES MAGISTRATE JUDGE