IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GREGORY F. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-362-SRF |
| | ) | |
| SGT. WILFRED BECKLES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the court in this civil rights action is a motion for a new trial pursuant to Federal Rules of Civil Procedure 59 and 60 filed by plaintiff Gregory F. Robinson ("Robinson").[1] (D.I. 273) Plaintiff seeks relief for alleged civil rights violations committed by Angelina DeAllie ("DeAllie"), Veronica Downing ("Downing"),[2] and Wilfred Beckles ("Beckles") (collectively, "defendants"). For the following reasons, plaintiff's motion for a new trial is DENIED.[3]

**II. BACKGROUND**

On April 29, 2010, Robinson, a former inmate incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983. (D.I. 2) Plaintiff alleged constitutional violations, including violations of the First,

---

[1] The briefing for the pending motion is as follows: plaintiff's opening brief in support of his motion for a new trial (D.I. 273), defendants' answering brief (D.I. 274), and plaintiff's reply brief (D.I. 276).
[2] Veronica Downing's present legal name is "Veronica Tilghman." (D.I. 247 at 17) The parties stipulated that this defendant would be referred to as "Veronica Downing" for purposes of trial, and the court will continue to refer to defendant as "Veronica Downing" for the purposes of this Memorandum Opinion. (*Id.*)
[3] The parties consented to jurisdiction by a U.S. Magistrate Judge on July 7, 2017. (D.I. 222)

Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as state tort claims. (D.I. 2); *see also Robinson v. Danberg*, 729 F. Supp. 2d 666, 672-73 (D. Del. 2010).

On August 6, 2010, the court dismissed thirty-seven defendants and deemed the majority of the claims frivolous. (D.I. 18); *Robinson*, 729 F. Supp. 2d at 689. On January 21, 2011, plaintiff moved to amend his complaint to correct pleading deficiencies identified by the court, and the court granted this motion to amend on April 27, 2011. (D.I. 34; D.I. 54)

On December 16, 2010, the court dismissed the complaint for failure to submit completed service forms. (D.I. 27) Plaintiff subsequently moved for leave to file an amended complaint and two motions for the appointment of counsel. (D.I. 29; D.I. 31; D.I. 33) The court reopened the case on February 2, 2011, and granted plaintiff thirty days to serve the complaint. (D.I. 36)

On October 24, 2012, the court referred the case to the Federal Civil Panel for representation and stayed the case. (D.I. 154) The stay was lifted on December 7, 2012 upon the entry of appearance by counsel of record. (D.I. 155)

On August 15, 2014, defendants moved for summary judgment. (D.I. 189) Judge Robinson granted defendants' motion for summary judgment on July 24, 2015 and directed that judgment be entered in defendants' favor. (D.I. 209; D.I. 210; D.I. 211); *Robinson v. Beckles*, 117 F. Supp. 3d 528 (D. Del. 2015).

Plaintiff timely appealed Judge Robinson's decision, and the Third Circuit issued its Opinion on December 19, 2016. *See Robinson v. Danberg*, 673 F. App'x 205 (3d Cir. 2016). The Third Circuit affirmed in part, reversed in part, and vacated in part, remanding the surviving claims against the defendants, correctional officers, to the District Court. *See id.* at 208. On

January 11, 2019, in a Memorandum Opinion, the court denied defendants' motions for summary judgment.[4] (D.I. 235; D.I. 236)

A jury trial commenced on June 24, 2019 and concluded on June 27, 2019. The jury returned a verdict in favor of defendants. (D.I. 269) The court subsequently entered a judgment in favor of defendants and closed the case. (D.I. 272) On July 25, 2019, plaintiff filed the present motion for a new trial. (D.I. 273)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party – . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). Among the most common reasons for granting a new trial are: "(1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) when newly discovered evidence would be likely to alter the outcome of the trial; (3) when improper conduct by an attorney or the court unfairly influenced the verdict; or (4) when the jury verdict was facially inconsistent." *Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584-85 (D.N.J. 1997) (citations omitted).

---

[4] Specifically, the Third Circuit: (1) reversed the entry of summary judgment on Robinson's Eighth Amendment claim against DeAllie for allegedly macing his cell, (2) vacated this court's grant of summary judgment for Beckles on Robinson's pretrial Fourteenth Amendment excessive force claim for allegedly injuring his hand while removing handcuffs and remanded the claim for further proceedings consistent with its opinion, and (3) vacated this court's grant of summary judgment for Downing on Robinson's post-conviction Eighth Amendment excessive force claim for allegedly striking Robinson in the face and remanded the claim for further proceedings consistent with its opinion. *Id.* at 210-12. The court denied defendants' motions for summary judgment as to each of these claims on remand. (D.I. 235; D.I. 236)

3

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law, in that the Court need not view the evidence in the light most favorable to the prevailing party, a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand" or where the verdict "cries out to be overturned" or "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991).

## IV. DISCUSSION

Plaintiff argues that four instances of prejudicial conduct warrant a new trial: (1) Downing's testimony regarding plaintiff's alleged threats of rape; (2) failure to excuse Juror No. 3 after she admitted to seeing plaintiff outside of the courtroom without a limp; (3) disparagement of plaintiff's counsel's integrity by plaintiff's hostile witness; and (4) defendants' alleged violation of the stipulation which precluded any reference to plaintiff's post-suit criminal charges.[5] (D.I. 273)

---

[5] Plaintiff concedes that the last three of these instances (Juror No. 3's outside observations of plaintiff, plaintiff's hostile witness' accusations of dishonesty, and defendants' alleged violation of a pretrial stipulation) are not independently sufficient to warrant a new trial, but argues that their cumulative effect supports a new trial. (D.I. 273 at 6; D.I. 276 at 2) Plaintiff cites no legal authority that supports granting a new trial based upon a combination of incidents that, individually, would not support a new trial. As discussed in Sections (IV)(b)-(d) *infra*, these instances do not warrant a new trial.

4

### a. Downing's Testimony Regarding Plaintiff's Alleged Threats of Rape

At trial, Downing was asked why plaintiff might be bringing these claims.[6] (D.I. 273 at 4) Downing testified that plaintiff had repeatedly threatened to rape her and her daughter. (*Id.* at 3)

Plaintiff objected to this testimony. (D.I. 274 at 2) The court sustained plaintiff's objection and gave the jury a curative instruction to disregard Downing's answers. (*Id.*; D.I. 273 at 4) Thereafter, plaintiff moved for a mistrial, which the court denied. (D.I. 273 at 4) Plaintiff contends that Downing's testimony seemed scripted, though the question prompting her response was "innocuous." (*Id.*) Plaintiff argues that the alleged threats of rape were not connected to the incidents at issue at trial and were intended to inflame the jury. (*Id.*) Furthermore, plaintiff avers that the court had established that discussions regarding rape were improper.[7] (*Id.*) Plaintiff

---

[6] Plaintiff does not attach relevant portions of the trial transcript to his motion for a new trial. Defendants argue that such a failure is fatal to plaintiff's motion, and cite *Carlton v. C.O. Pearson*. (D.I. 274 at 2-3) The court in *Carlton* noted:

> Generally speaking, specific reliance upon the trial transcript is necessary to demonstrate one's entitlement to relief on a Rule 59 motion based upon determinations made at trial. Thus, to the extent Plaintiff's motion is based upon any perceived infirmity in the Court's rulings at trial, his failure to rely upon any aspect of the trial transcript is fatal to his assertions. *Nonetheless, the Court has considered the arguments raised in Plaintiff's post-verdict motion and finds that they do not demonstrate entitlement to a new trial.*

*Carlton v. C.O. Pearson*, 384 F. Supp. 3d 382, 386-87 (W.D.N.Y. 2019) (internal citations omitted) (emphasis added). In the case at bar, plaintiff fails to identify specific evidence and testimony from the record. *See U.S. v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("It has been oft-noted that 'Judges are not like pigs, hunting for truffles buried in the record.'"). As discussed in Sections (IV)(a)-(d) *infra*, without a transcript, the court, nonetheless, considers each of the instances that plaintiff alleges warrant a new trial.

[7] Plaintiff states in a footnote that a violation of an order granting motions *in limine* may serve as a basis for a new trial when "the order is specific in its prohibition, the violation is clear, and unfair prejudice is shown." (D.I. 273 at 4 n.1) (citing Fed. R. Civ. P. 59(a)(2); *Black v. Shultz*, 530 F.3d 702, 706 (8th Cir. 2008)) However, plaintiff does not identify a specific motion and none of the motions *in limine* concerned allegations, charges, or suggestions of rape. (D.I. 255)

contends that it is reasonably probable that the jury's verdict was influenced by Downing's testimony. (*Id.* at 5)

Plaintiff cites *Draper* and *Fineman* to bolster his assertion that the test for a new trial in this instance is whether the improper assertions have made it "reasonably probable that the verdict was influenced by prejudicial statements." (*Id.*); *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 207 (3d Cir. 1992). However, both *Draper* and *Fineman* addressed motions for a new trial based upon counsel's improper and prejudicial statements made repeatedly throughout closing arguments. *Draper v. Airco, Inc.*, 580 F.2d 91, 94-95 (3d Cir. 1978) (ordering a new trial because of inappropriate references to the opposing party's wealth, to facts not in evidence, and insults to opposing counsel); *Fineman*, 980 F.2d at 206-08 (holding a new trial was warranted because plaintiff's counsel "improperly testified to his own truthfulness and trustworthiness, supplied 'facts' not in evidence about the credibility of [defendant's] witnesses, accused [defendant]'s witnesses of being 'liars' and 'perjurers,' and levied 'an unadorned, disparaging attack' upon defense counsel throughout his summation").

Plaintiff's reliance on *Draper* and *Fineman* does not support the instant motion which is not directed to any misconduct of counsel. Here, plaintiff concedes that the question preceding Downing's testimony was innocuous. (D.I. 273 at 4) Defense counsel did not improperly elicit the testimony from the witness.

Furthermore, plaintiff's own exhibits documented plaintiff's profane and expletive-laden threats to correctional officers, which were similar to those that Downing described at trial.[8]

---

[8] Defendants also cite an incident report in Exhibit B to their answering brief, which documents plaintiff's alleged threats of rape. (D.I. 274, Ex. B) This incident report was not submitted as an exhibit at trial and, therefore, will not be considered in deciding the present motion.

6

(D.I. 274, Ex. A) For example, plaintiff's Exhibit 12 ("PX12"),[9] is an incident report that describes plaintiff threatening DeAllie in the following manner: "[W]ait til I get outta here, I'm gonna murder all of yall, I'm gonna kill you and your [expletive] kids, my peoples know where you live you bald headed [expletive] and all your [expletive] [expletive] family gonna die." (D.I. 274, Ex. A) Plaintiff argues that this statement in the incident report is prejudicial, but not "unfairly prejudicial," in part because it is temporally separate from the claim against Downing. (D.I. 276 at 4) Plaintiff states in a conclusory manner that Downing's testimony regarding plaintiff's alleged threats of rape are "not in the same realm" as the alleged threats recorded in the incident report which plaintiff introduced into evidence. (*Id.* at 5)

Moreover, immediately following Downing's testimony and the subsequent sidebar, the court provided a curative instruction for the jury to disregard Downing's answers. The curative instruction "sufficed to adequately ameliorate the harm caused" by Downing's testimony. *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 620 (D. Del. 2018). The court did not establish a general "rule" prohibiting reference to "rape" in any context at trial, as plaintiff contends. Plaintiff's inmate witness, Kevin Jackson ("Mr. Jackson"), was previously convicted of rape and the court made a ruling limited to this witness permitting defendants to ask whether Mr. Jackson was a convicted felon, but prohibiting questions regarding the underlying charge and the nature of the offense that resulted in his conviction. (D.I. 274 at 4-5)

Plaintiff has not provided any legal authority supporting a new trial based upon Downing's testimony regarding plaintiff's alleged threats of rape. Plaintiff has not demonstrated that Downing's testimony prejudiced the jury, especially when compared to the plaintiff's evidence of his invective. Therefore, the court denies plaintiff's motion for a new trial.

---

[9] PX12 is attached to defendants' answering brief as Exhibit A. (D.I. 274, Ex. A)

7

### b. Juror No. 3

At trial, Juror No. 3 presented a note to the court, which described her observation of plaintiff walking outside of the courtroom without the limp he demonstrated in the courtroom. (D.I. 273 at 6) Juror No. 3 stated that she wanted to bring her observation to the court's attention and that she could remain an impartial juror and decide the case based solely upon the evidence presented in court. (D.I. 274 at 5-6) Plaintiff moved for Juror No. 3 to be excused, and the court denied the motion. (D.I. 273 at 6) Plaintiff argues that a new trial is warranted because of Juror No. 3's admitted observation and her incorrect identification of plaintiff as the defendant. (*Id.* at 6-7)

"[I]f a [party] can show that there is a reasonable probability of juror taint of an inherently prejudicial nature, a presumption of prejudice should arise that defendant's right to a fair trial had been infringed upon." *Massey v. State*, 541 A.2d 1254, 1257 (Del. 1988). Plaintiff cites *Bolt v. Hickok*, 887 F. Supp. 709, 713 (D. Del. 1995) for the proposition that a new trial should be granted if a juror was prejudiced from the outset of the case. (D.I. 273 at 6) Plaintiff suggests that Juror No. 3's reference to plaintiff as the "'defendant' presumably because he spent time in prison" is indicative of prejudice. (*Id.*) However, plaintiff cites no legal authority that misidentifying the party designation of an individual is indicative of prejudice at the outset of the case or juror taint of an inherently prejudicial nature.

Furthermore, Juror No. 3 voluntarily brought her observation to the attention of the court, and upon questioning by the court, stated that she could disregard what she allegedly saw outside of the courtroom and remain an impartial juror. (*Id.*; D.I. 274 at 5-6)

It is inevitable in any trial that jurors, the parties, and counsel may observe each other entering and exiting the courthouse or out and about when the court is in recess. Jurors are

instructed to refrain from considering anything outside of the evidence presented at trial. Juror No. 3 reported her observation and confirmed that she could follow the court's instruction. Her candor in disclosing her observation of the plaintiff speaks more of her impartiality than purported bias. Therefore, there was no reason to excuse her from serving on the jury. Plaintiff has failed to show a reasonable probability of juror taint and the court denies plaintiff's motion for a new trial.

### c. Plaintiff's Hostile Witness' Accusations of Dishonesty

Plaintiff alleges that, prior to trial, plaintiff's counsel expressed to plaintiff's inmate witness, Mr. Jackson, that he would try to move him out of solitary confinement.[10] (D.I. 273 at 7-8) However, plaintiff's counsel could not secure such accommodations for plaintiff's witness. (D.I. 273 at 7-8) At trial, Mr. Jackson became a hostile witness and alleged that plaintiff's attorney lied to him on multiple occasions. (*Id.* at 7) Plaintiff contends that, in accusing plaintiff's counsel of dishonesty within the presence of the jury, Mr. Jackson prejudiced plaintiff's counsel, and by extension, plaintiff. (*Id.* at 8)

Plaintiff cites three cases to support his argument that Mr. Jackson's accusations of dishonesty warrant a new trial: (1) *Hughes v. State*, (2) *Putney v. Rosin*, and (3) *McLeod v. Swier*. (*Id.*) These cases are inapposite. The court in *Hughes* discussed prosecutorial misconduct, and concluded that where a prosecutor labels a defendant's statements as "lies," the remarks prejudicially affect the defendant's substantial rights and a new trial is warranted. *See Hughes v. State*, 437 A.2d 559, 571-72 (Del. 1981). In *Putney*, the court granted a new trial where opposing counsel's comments in his opening statement and closing argument suggested that plaintiff's counsel was manufacturing plaintiff's claim. *See Putney v. Rosin*, 791 A.2d 902,

---

[10] Mr. Jackson was detained in solitary confinement pending his trial testimony.

905-06 (Del. Super. Ct. 2001). The court concluded that accusations of manufacturing claims in the presence of the jury "so taints the fairness of the proceeding that no instruction can dispel the prejudice." *Id.* at 906. In *McLeod*, plaintiff's counsel suggested that defendants' counsel manipulated testimony improperly. *See McLeod v. Swier*, 2016 WL 355123, at *2 (Del. Super. Ct. Jan. 27, 2016). The court held that "an attack on opposing counsel at trial that is calculated to prejudice the attorney, and by association, the attorney's client, or that attacks the integrity of opposing counsel is a violation of the Rules of Professional Conduct." *McLeod*, 2016 WL 355123, at *10.

In all three cases upon which plaintiff relies, opposing counsel attacked the integrity and honesty of counsel or a party within the presence of the jury. Here, it was plaintiff's own witness who attacked the credibility of plaintiff's counsel. Plaintiff made the choice to call this witness at trial and must accept the testimony plaintiff elicited from him upon examination. Plaintiff has not cited any legal authority wherein a motion for a new trial was granted based upon disparagement of the moving party's counsel by the moving party's witness. Furthermore, plaintiff did not refrain from further questioning of the hostile witness or move to strike Mr. Jackson's testimony. *See Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) ("[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial.") (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)). Therefore, the court denies the motion for a new trial.

### d. Defendants' Reference to Plaintiff's Criminal Charges

Plaintiff contends that defendants referenced plaintiff's current criminal charges, in violation of a stipulation, thereby prejudicing plaintiff.[11] (D.I. 273 at 9; D.I. 276 at 8) Plaintiff does not cite any stipulation.[12] (D.I. 273; D.I. 276) Nor does plaintiff indicate what question was asked, which defendant asked it, and to which witness the question was directed. Plaintiff has not cited any part of the transcript nor any legal authority in support of his argument that an alleged violation of a stipulation prejudiced plaintiff and a motion for a new trial should be granted. "It has been oft-noted that 'Judges are not like pigs, hunting for truffles buried in the record.'" *U.S. v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006); *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). It is the responsibility of the parties to "comb the record and point the Court to the facts that support their arguments." *Id.* (citing *Hornin v. Montgomery Ward & Co.*, 120 F.2d 500, 504 (3d Cir. 1941)). Plaintiff has failed to point the court to any evidence in the record warranting a new trial. None of the instances of purported trial misconduct standing alone or in combination warrant the grant of a new trial. Therefore, plaintiff's motion for a new trial is denied.

---

[11] The jury was aware that plaintiff was a prison inmate at the time of the civil rights violations he alleges based upon the nature of his claims. However, the plaintiff was charged with new offenses more recently, during the pendency of the lawsuit. Alleged references to these more recent criminal charges are the basis of plaintiff's instant motion.

[12] Defendants suggest that plaintiff may be referencing section (XV)(A)(1) of the pretrial order. (D.I. 274 at 8) The court will not assume any references to the record that are not specified by plaintiff.

11

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for a new trial is denied. (C.A. No. 10-362, D.I. 273) An Order consistent with this Memorandum Opinion shall issue.

Dated: January 23, 2020

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE